**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DIVISION**

| | |
|---|---|
| VICTORIA E. B.,[1] | Case No. SACV 20-01047-AS |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER OF** |
| v. | **REMAND** |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | |
| Defendant. | |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is remanded for further administrative action consistent with this Opinion.

---

[1]    Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**PROCEEDINGS**

On June 11, 2020, Victoria E. B. ("Plaintiff") filed a Complaint seeking review of the denial of her application for Disability Insurance Benefits by the Social Security Administration. (Dkt. No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 7, 11). On October 26, 2020, Defendant filed an Answer along with the Administrative Record ("AR"). (Dkt. Nos. 15-16). On March 1, 2021, the parties filed a Joint Submission ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Dkt. No. 20).

The Court has taken this matter under submission without oral argument. <u>See</u> C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISIONS**

On November 4, 2016, Plaintiff, formerly employed as a salesperson, doughnut maker, bakery clerk, cookie decorator, and dessert finisher (<u>see</u> AR 32-35, 201-06), filed an application for Disability Insurance Benefits, alleging a disability onset date of September 9, 2016. (<u>See</u> AR 15, 154-60). Plaintiff's application was denied, initially on April 10, 2017, and on reconsideration on July 25, 2017. (<u>See</u> AR 15, 52, 86).

On March 26, 2019, Plaintiff, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") John Kays. (<u>See</u> AR 31-43, 48-49). The ALJ also heard testimony from vocational expert ("VE") Ronald K. Hatakeyama. (<u>See</u> AR 43-48). On April 17, 2019, the ALJ

issued a decision denying Plaintiff's request for benefits.  (See AR 15-23).

Applying the five-step sequential process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity from September 9, 2016, the alleged onset disability onset date.  (AR 17). At step two, the ALJ determined that Plaintiff had the severe impairments of bipolar disorder, anxiety and alcohol abuse in recent remission.  (AR 17-18).[2]  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in the regulations.  (AR 18).[3]

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[4] and found that Plaintiff could perform the full range of work at all exertional levels with the following limitations:  "can perform simple repetitive tasks; able to understand, remember, [and] carry out simple written/oral instructions from supervisors; perform activities within a schedule and maintain regular attendance; perform work activity without additional supervision; occasional interaction [with] supervisors, co-workers and the public; focus and concentration 2 hours

_____

[2]    The ALJ found that Plaintiff's other alleged impairments -- diabetes, neuropathy, diabetic retinopathy, and fatty liver -- were nonsevere.  (AR 17-18).

[3]    The ALJ specifically considered Listings 12.04 (depressive and bipolar related disorders) and 12.06 (anxiety and obsessive-compulsive disorders).  (AR 18).

[4]    A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. § 404.1545(a)(1).

at a time; and miss work once every 30-45 days." (AR 19-22). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 21-22). At step five, the ALJ determined, based on Plaintiff's age, education, work experience, RFC, and the VE's testimony, that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 22-23). Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 9, 2016 though April 17, 2019. (AR 23).

The Appeals Council denied Plaintiff's request for review on April 23, 2020. (AR 1-5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. <u>See</u> 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence. <u>See</u> <u>Brewes v. Comm'r</u>, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. <u>Garrison v. Colvin</u>, 759 F.3d 995, 1009 (9th Cir. 2014). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Revels v. Berryhill</u>, 874 F.3d 648, 654 (9th Cir. 2017). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's]

conclusion." <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001)(internal quotation omitted).  As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006).[5]

## **PLAINTIFF'S CONTENTIONS**

Plaintiff contends that the ALJ erred in assessing Plaintiff's RFC by failing to properly consider (1) Plaintiff's subjective symptom testimony, (2) the opinion of Plaintiff's treating physician (Dr. Lupsa), (3) the opinion of a consultative examiner (Dr. Herron), (4) the opinion of a licensed clinical social worker (Karen Depreist), and (5) the opinions of all consultative examiners that Plaintiff was disabled. (<u>See</u> Joint Stip. at 3-14, 23-31, 36-40, 43-49).

## **DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's first claim -- that the ALJ erred in failing to provide clear and convincing testimony for rejecting Plaintiff's testimony about her pain and limitations -- warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's first claim, the Court will not address Plaintiff's claims that the ALJ erred

---

[5]     The harmless error rule applies to the review of administrative decisions regarding disability.  <u>See</u> <u>McLeod v. Astrue</u>, 640 F.3d 881, 886-88 (9th Cir. 2011); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

in failing to properly assess the opinions of Plaintiff's treating physician, the consultative examiners, and the licensed clinical social worker.

**A.    The ALJ Failed to Provide Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Symptom Testimony**

Plaintiff asserts that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's testimony about her pain and limitations. (See Joint Stip. at 3-14, 23-27). Defendant asserts that the ALJ provided valid reasons for discounting Plaintiff's testimony. (See Joint Stip. at 15-23).

1.    <u>Legal Standard</u>

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. <u>Id.</u> (citing <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014-15 (9th Cir. 2014)). "In this analysis, the claimant is <u>not</u> required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." <u>Id.</u> (emphasis in original)(citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." <u>Id.</u> (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Id. (citation omitted); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3.[6] SSR 16-3p eliminated the term

_____

[6] SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR 16-3p, which became effective on March 28, 2016, was in effect at the time of the Appeal Council's April 23, 2020 denial of Plaintiff's request for review. Nevertheless, the regulation on evaluating a claimant's symptoms, including pain, see 20 C.F.R. § 404.1529, has not changed.

"credibility" from the Agency's sub-regulatory policy. However, the Ninth Circuit Court of Appeals has noted that SSR 16-3p:

> makes clear what [the Ninth Circuit's] precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

Trevizo, 871 F.3d at 678 n.5 (quoting SSR 16-3p)(alterations omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider: "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, supra. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009)(citation omitted).

The ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)(citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015)("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain;" citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

2.  Plaintiff's Subjective Statements and Testimony[1]

Plaintiff completed an Adult Function Report, dated January 12, 2017 (see AR 191-99), in which she reported that she is limited in her ability to work because she is physically tired, is sometimes unable to move because of depression and pain, has distracting audio and visual hallucinations, feels unsafe leaving the house, is paranoid, and is

---

[1]    Plaintiff submitted an Adult Function Report, and testified at an administrative hearing.  The Court assumes, unless it is clear that Plaintiff was referring to a prior time frame, that Plaintiff's statements and testimony about her subjective symptoms referred to the symptoms she was experiencing at the time the statements were made.

overwhelmed. (AR 191).[2] On a typical day, she checks her blood sugar, prepares coffee/food, reads, feeds dogs, checks mail, reads again, does laundry and possibly washes dishes, takes a nap, eats dinner with her husband, watches a show, and sleeps. (AR 192). As a result of her conditions, she can no longer walk or stand for long periods, concentrate, focus or produce work. (Id.). She goes out daily and can go out alone, but she does not like to go out. Although she drives, she does not like driving, and parking lots cause her anxiety. She shops in stores for groceries weekly, which takes two to three hours. (AR 194-95). She is able to pay bills, handle a savings account and use a checkbook/money orders during moments of clarity throughout the month, but she cannot count change (due to her inability to do quick math and to being distracted because of her conditions). (Id.). She has problems getting along with others because she is paranoid and often feels attacked. She does not get along well with authority figures because she is anxious and intimidated. (AR 196-97). Her conditions affect her ability to walk, stair-climb, use hands, talk, see, memory, complete tasks, concentrate, understand, follow instructions, and get along with others. She does not finish what she starts. She can follow written instructions but she cannot follow spoken instructions very well. (AR 196).

At the administrative hearing, Plaintiff testified that she last worked in 2016, but she had a period of psychosis and was given a leave

---

[2]    Since, as noted above, the ALJ did not find Petitioner's alleged physical impairments severe, the Court will not discuss Plaintiff's testimony concerning her alleged physical impairments.

of absence which was extended a year. She described the period of psychosis as hearing things, not feeling like herself, having visual and audio hallucinations, having out-of-control blood sugar, not being able to take care of herself properly, and feeling like she was losing her mind. She wanted to return to work but she was unreliable and unable to work due to her conditions. (AR 33). She is unable to work because her mental health prevents her from taking care of herself, her physical state makes her unable to know when she is able to work and sometimes causes her to sleep or recover at home several days a week, and she hears and sees things (preventing her from interacting with people and doing things), albeit not as bad as when she stopped working. (AR 35-36). She sleeps a lot during the day. Id. Although she drives, she does not like to drive because she feels she is a hazard. (AR 37). She has difficulty interacting with people because she is uncomfortable around others and sometimes hears things (which causes her to answer unasked questions or to react to noises). (AR 37, 41). She has to attend to her diabetes constantly. (AR 38). She would not be able to do a simple, low stress job because she has very little energy, takes naps throughout the day (she feels tired due to her diabetes and psychiatric medications), and gets easily distracted. (AR 37, 39). She has panic attacks approximately two to three times a month, "depending on what's going on in" her life. The panic attacks are random and unpredictable and might be triggered by, for example, being stuck at home without a car and feeling trapped. (Id.). She sees a psychiatrist every two to three weeks and a therapist every three weeks (she has

11

difficulty getting appointments, and she misses appointments because it is hard to get out of bed). (AR 40-41).

### 3. The ALJ's Credibility Findings

After briefly summarizing Plaintiff's testimony and statements (see AR 19), the ALJ found Plaintiff's testimony about the intensity, persistence and limiting effects of her mental health symptoms to be inconsistent with the objective medical evidence, her activities of daily living, and Plaintiff's prior report of her symptoms. (See AR 19-20).

The ALJ stated that, while Plaintiff claimed to suffer from depression, anxiety, and audio visual hallucinations, her allegations were inconsistent with the notations/findings in several medical records, specifically, (1) an office visit on October 11, 2016 reporting that "Plaintiff's mood has improved, denies side effects with medication. Noises has [sic] decreased," (AR 378); (2) mental status health examinations on November 30, 2015, January 4, 2016, March 7, 2016, March 21, 2016, April 4, 2016, June 16, 2016, August 1, 2016, August 17, 2016, September 15, 2016, and October 11, 2016 office indicating that Plaintiff has fair grooming, is cooperative, has clear and coherent speech, has a depressed and anxious mood and a restricted affect, denies having auditory or visual hallucinations, is alert and goal-oriented, has intake insight/judgment, and has intact memory/cognition and impulse control including a November 11, 2016

report that Plaintiff's depressed mood is improving. (AR 400, 398, 395, 393, 391, 389, 386, 384, 382, 380, 378; (3) an office visit on November 29, 2016 noting that Plaintiff is properly dressed, has good hygiene and grooming, is mildly anxious, has a depressed mood and affect, makes good eye contact, has speech within normal limits, is oriented and linear, denies having auditory or visual limitations at the preset time, and has intact insight and judgment (AR 441); and (4) Kaiser Permanente Progress Notes containing mental status examinations on January 4, 2017, February 16, 2017, April 17, 2017, May 12, 2017 and May 17, 2017 indicating that Plaintiff has good grooming, appropriate dress, normal and cooperative behavior, normal speech, is oriented and alert, has intact recent and remote memory, fair or good insight, fair or unimpaired judgment, coherent and normal thoughts, congruent mood, affect within normal limits, normal motor, and no suicidal or homicidal ideation, plan or intent (AR 557-58, 674.

The ALJ found that Plaintiff's statement that she was paranoid to leave the house (see AR 191) to be inconsistent with her statements that she goes out daily, shops for groceries weekly, and goes out to dinners with her husband and/or to the doctors almost daily (see AR 194-95). (AR 20).

The ALJ also found Plaintiff's statements about her difficulties with memory, completing tasks, concentrating, understanding, following instructions, and getting along with others (see AR 196) to be inconsistent with Plaintiff's statement that she can pay bills, handle

a savings account, and use a checkbook/money orders (<u>see</u> AR 194). (AR 20).

The ALJ further found Plaintiff's testimony about having panic attacks two to three times a month on a random basis (<u>see</u> AR 38-39) to be inconsistent with a notation in a February 16, 2017 Kaiser Permanente Progress Note that Plaintiff reported that her panic attacks are less frequent, once a month, and that her depression is well-controlled (<u>see</u> AR 666). (AR 20).

4.   <u>Analysis</u>

The Court finds that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony about the intensity, persistence and limiting effects of her symptoms.

While the ALJ properly found there was a lack of objective medical evidence supporting Plaintiff's testimony concerning her symptoms and limitations, <u>see</u> SSR 16-3p, *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"); 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."); <u>see</u> <u>also</u> <u>Nguyen v. Colvin</u>,

14

639 Fed.Appx. 510, 511 (9th Cir. 2016)("A diagnosis, in itself, is not sufficient to establish a disability."), this factor cannot, by itself, support an adverse finding about Plaintiff's testimony.  See Trevizo, 871 F.3d at 679 (once a claimant demonstrates medical evidence of an underlying impairment, "an ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence.'")(quoting Robbins, supra); see also SSR 16-3p, *7 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record. . . . However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment related-symptoms alleged by the individual.").[3]

Although an inconsistency between a claimant's statement of disabling symptoms and limitations and a claimant's daily activities may be used to discount a claimant's testimony, see 20 C.F.R. § 404.1529(c)(3)(1) (a claimant's daily activities are one factor to be considered in evaluating a claimant's symptoms, such as pain); Ghanim, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."); Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012)("[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that

---

[3]    As discussed below, the ALJ did not provide any other valid reason for discounting Plaintiff's testimony.

are transferable to a work setting;" "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."), the ALJ improperly found inconsistencies in Plaintiff's testimony.

The ALJ's assertion that Plaintiff stated she was paranoid to leave the house (see AR 20 ["In spite of her allegation of paranoia to leave the house ([AR 191]), the claimant stated she goes out daily and shops weekly to dinners and doctors ([AR 194-95])."]) mischaracterized Plaintiff's statements about leaving her house and her paranoia. Plaintiff did not state that she was paranoid to leave the house. Rather, in response to a question asking how Plaintiff's conditions limit her ability to work, Plaintiff stated, in part, "I feel unsafe leaving the house. I am paranoid. I am overwhelmed and spiral into existential crisis." (AR 191). These statements, on their own, do not indicate or reflect a connection between Plaintiff's fear of leaving the house and Plaintiff's paranoia. Indeed, Plaintiff's fear of leaving the house may have been related to her other stated limitations, such as not doing yard work because she does not "like going outside or getting dirty" (AR 194) and not liking to drive (AR 37, 194). Moreover, Plaintiff's paranoia may have been related to her statement about her difficulties in getting along with families, friends, neighbors, or others because of her paranoia (AR 196). The ALJ did not ask Plaintiff at the administrative hearing about her statements regarding feeling unsafe leaving the house and experiencing paranoia, and possibly misconstrued Plaintiff's statements about feeling unsafe leaving the

house and experiencing paranoia.  Therefore, the ALJ erred in finding such statements to be inconsistent with Plaintiff's statements about her activities outside the house.

The ALJ also erred in finding Plaintiff's statements about her difficulties with memory, completing tasks, concentrating, understanding, following instructions, and getting along with others (see AR 196) to be inconsistent with Plaintiff's ability to handle her financial affairs and bank accounts (see AR 194-95).  (AR 20). Plaintiff stated that she was able to pay bills, handle a savings account, and use a checkbook/money orders, but was unable to count change.  (AR 194).  When asked to explain her answers, Plaintiff stated, "[U]nable to do quick math any longer, too distracted.  Handle others in moments of clarity, throughout the month."  (Id.).  The ALJ failed to explain how Plaintiff's handling of money is inconsistent with Plaintiff's stated difficulties with memory, completing tasks, concentrating, understanding, following instructions, and getting along with others.  Moreover, it is not clear whether the ALJ considered Plaintiff's explanation that she is able to handle her financial affairs "in moments of clarity, throughout the month," and the ALJ did not ask Plaintiff at the administrative hearing about her explanation.

Finally, the ALJ also erred in finding that Plaintiff's testimony about having panic attacks two to three times a month, randomly, was inconsistent with her prior report about the frequency of her panic attacks and the status of her depression.  (AR 20).  At the March 26, 2019 hearing, Plaintiff testified that she has panic attacks, which she

estimated occurred "[l]ike two to three times a month, depending on what's going on in my life, and then sometimes they're just random."; and that the panic attacks were "completely unpredictable." (AR 38-39). In a February 16, 2017 Kaiser Permanente Progress Note, Plaintiff reported that "[p]anic attacks, less frequent, once a month" and that "[d]epression is well controlled." (AR 666). However, Plaintiff did not testify she definitively suffered two to three panic attacks a month; rather, she gave an estimate of the number of monthly panic attacks which she then stated were random and unpredictable. Moreover, variability in the frequency of panic attacks is not be uncommon. See Garrison, 759 F.3d at 1017 ("As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence. . ."). The ALJ at the administrative hearing did not ask Plaintiff about any alleged discrepancy in the number of panic attacks Plaintiff suffered in March 26, 2019 and February 16, 2017. Therefore, Plaintiff's statements in February 2017 about the frequency of her panic attacks were not necessarily inconsistent with her testimony in March 2019.

Because the Court finds that the ALJ did not discount Plaintiff's symptom testimony on legally permissible grounds, the Court is unable to defer to the ALJ's credibility determination. Cf. Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995)(the court will defer to the ALJ's credibility determinations when they are appropriately supported in the record by specific findings justifying that decision)(citations omitted).

**B.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's symptom testimony, remand is appropriate.  Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects.  Burrell, 775 F.3d at 1141 (citations omitted).[14]

[14]   The Court has not reached any other issue raised by Plaintiff except to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014). Accordingly, the Court declines to rule on Plaintiff's claims regarding the ALJ's failure to properly consider the opinion of Plaintiff's treating physician (Dr. Lupsa) (see Joint Stip. at 27-31, 36-38), the opinion of a consultative examiner (Dr. Herron) (see Joint Stip. at 38-40, 43-45), the opinion of a licensed clinical social worker
(continued...)

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 8, 2021

```
                              /s/
                         ALKA SAGAR
                 UNITED STATES MAGISTRATE JUDGE
```

---

[14] (...continued)
(Karen Depreist) (see Joint Stip. at 45-47), and the opinions of all consultative examiners that Plaintiff was disabled (see Joint Stip. at 47-49). Because this matter is being remanded for further consideration, these issues should also be considered on remand.